FILED
2020 Aug-26  PM 01:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

PFE / WRC: Sept. 2020
GJ # 10

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **PATRICK CHARLES BISHOP** | ) |

## INDICTMENT

The Grand Jury charges:

## Introduction

At all times material to this indictment:

### *The FDA and Relevant Statutes*

1.     The United States Food and Drug Administration (FDA) is a federal agency responsible for protecting the public health by ensuring, among other things, that food, drugs, and medical devices distributed in the United States are safe.

2.     Among the laws the FDA enforces is the Federal Food, Drug, and Cosmetic Act (FDCA), Title 21, United States Code, Section 301 *et seq.*

3.     The FDCA prohibits the introduction, or delivery for introduction, into interstate commerce of any drug that is adulterated or misbranded.

4.     Drugs are adulterated if they consist in whole or in part of any filthy, putrid, or decomposed substance; if they have been prepared, packed, or held under

1

insanitary conditions whereby they may have been contaminated with filth; or if the methods used in or the facilities or controls used for their manufacture, processing, packing, or holding do not conform to current good manufacturing practice.

5.     Drugs are misbranded unless their labeling bears adequate directions for use.  Adequate directions for use are directions under which a layperson can use a drug safely and for the purposes for which it is intended.  Directions for use may be inadequate if they omit or incorrectly specify the quantity of dose, the frequency of administration, the time of administration, the route of administration, or the preparation for use.

6.     The FDCA defines a "drug" to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," and "articles (other than food) intended to affect the structure or any function of the body of man."

7.     Title 18, United States Code, Section 670, known as the SAFE DOSES Act, makes it a crime for any person in or using any means or facility of interstate or foreign commerce to obtain a "pre-retail medical product" by fraud or deception, or to attempt to do so.

8.     The SAFE DOSES Act defines "pre-retail medical product" as a medical product that has not yet been made available for retail purchase by a consumer.  The SAFE DOSES Act defines "medical product" to include a drug, and defines "drug" to have the same meaning that the term has for purposes of the FDCA.

*PNC-27*

9.      PNC-27 is a peptide purportedly named for a researcher who developed it.  Peptides are chemical compounds consisting of amino acids linked in chains.

10.     The FDA has not approved PNC-27 for use in the United States as a drug to treat any disease, including any form of cancer.

### *Relevant Individuals and Entities*

11.     Defendant **PATRICK CHARLES BISHOP** resides in the Northern District of Alabama.  He has no formal training or advanced education in medicine or in the treatment of diseases such as cancer.

12.     Defendant **PATRICK CHARLES BISHOP** owns Patrick, LLC, an entity organized in Nevada in 2012.  Defendant **PATRICK CHARLES BISHOP** is the sole managing member of Patrick, LLC.

13.     Employee 1 resides in the Northern District of Alabama.  He is a son of defendant **PATRICK CHARLES BISHOP** and, during at least 2015 and 2016, worked as an employee of Patrick, LLC.  Employee 1 has no formal training or advanced education in medicine or in the treatment of diseases such as cancer.

14.     Employee 2 resides in the Northern District of Alabama.  He is a nephew of defendant **PATRICK CHARLES BISHOP** and, during at least 2015 and 2016, worked as an employee of Patrick, LLC.  Employee 2 has no formal

training or advanced education in medicine or in the treatment of diseases such as cancer.

15.     GL Biochem (Shanghai), Ltd. (GL Biochem) is a company based in China.  GL Biochem markets itself as a worldwide producer of research chemicals, including peptide reagents, custom peptides, and antibodies.  Defendant **PATRICK CHARLES BISHOP** ordered large quantities of PNC-27 from GL Biochem.

16.     Defendant **PATRICK CHARLES BISHOP** used the business name Best Peptide Supply, LLC, to order PNC-27 from GL Biochem.   Defendant **PATRICK CHARLES BISHOP** applied to the Internal Revenue Service for a tax employer identification number for Best Peptide Supply, LLC.  The application listed the start date of Best Peptide Supply, LLC, as 2007; the responsible party as defendant **PATRICK CHARLES BISHOP**; the principal business activity as wholesale agent; and the principal merchandise as "sales of proteins used by researchers."

17.     Immuno Cellular Restoration Program, Inc. (ICRP) is an entity formed in Virginia in 2005.  Defendant **PATRICK CHARLES BISHOP** used ICRP as a business name under which he and others sold and distributed PNC-27 drug products from Birmingham, Alabama, to customers outside the state of Alabama.

18.     V.W. is a registered nurse affiliated with an entity called My Wellness Tutor.  V.W. worked with defendant **PATRICK CHARLES BISHOP** to market,

sell, and distribute PNC-27 drug products as a treatment for cancer.

19.    Hope4Cancer advertises on the internet as a holistic cancer treatment center with clinics in Mexico.  Patients from the United States and elsewhere visit Hope4Cancer clinics in Mexico, some for extended stays during which they receive various treatments.  Defendant **PATRICK CHARLES BISHOP** marketed, sold, and distributed PNC-27 drug products to Hope4Cancer and Hope4Cancer patients. Hope4Cancer provided PNC-27 drug products it received to patients in Mexico and elsewhere as a treatment for cancer.

20.    Cancer Strategy, Inc., is an entity organized in Delaware in 2016. According to its incorporation records, defendant **PATRICK CHARLES BISHOP** holds 999 of the 1000 issued shares of the corporation.  Employee 1 holds the remaining share.

## Count One
## Conspiracy
## Title 18, United States Code, Section 371

21.    The factual allegations of paragraphs 1 through 20 of this indictment are re-alleged as though fully set forth herein.

22.    Between at least in or about 2014 and continuing to in or about October 2016, the exact dates being unknown, in Jefferson County, within the Northern District of Alabama, and elsewhere, defendant

## PATRICK CHARLES BISHOP

knowingly and willfully conspired with others known and unknown to the grand jury to commit certain offenses, namely:

    a.    to defraud the United States of and concerning its governmental functions and rights, specifically, by impeding, impairing, obstructing, and defeating, through dishonest and deceitful means, the lawful functions of the FDA in the regulation, review, and approval of drugs distributed in the United States, in violation of Title 18, United States Code, Section 371;

    b.    with intent to defraud and mislead, to introduce and deliver for introduction into interstate commerce drugs that were misbranded within the meaning of Title 21, United States Code, Section 352(f)(1), in that the drugs' respective labeling did not bear adequate directions for use, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2);

    c.    with intent to defraud and mislead, to introduce and deliver for introduction into interstate commerce drugs that were adulterated within the meaning of:

        i.    Title 21, United States Code, Section 351(a)(1), in that the drugs consisted in whole or in part of a filthy, putrid, or decomposed substance, namely bacterial contamination;

6

ii.      Title 21, United States Code, Section 351(a)(2)(A), in that the drugs had been prepared, packed, and held under insanitary conditions whereby they may have been contaminated with filth; and

iii.      Title 21, United States Code, Section 351(a)(2)(B), in that the methods used in, and the facilities used for, the drugs' manufacture, processing, packing, and holding did not conform to current good manufacturing practice,

in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

## Manner and Means

23.    It was a part of the conspiracy that defendant **PATRICK CHARLES BISHOP** would and did obtain PNC-27 under false pretenses that he intended to use the product solely for laboratory research purposes.

24.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury would and did manufacture, label, market, sell, and distribute PNC-27 drug products as a treatment for cancer knowing that such introduction of PNC-27 drug products into interstate commerce was against federal law.

7

25.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury would and did manufacture, label, market, sell, and distribute PNC-27 drug products as a treatment for cancer knowing that PNC-27 was not approved by the FDA for use as a drug to treat any disease.

26.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury would and did manufacture, label, market, sell, and distribute PNC-27 drug products as a treatment for cancer knowing that those drug products had been manufactured in an unclean, non-sterile environment without quality control measures.

27.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury would and did manufacture, label, market, sell, and distribute PNC-27 drug products as a treatment for cancer knowing that those drug products did not contain adequate directions for safe use.

28.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury would and did take steps to avoid detection by the FDA or other authorities of their manufacture, labeling, marketing, selling, and distributing of PNC-27 drug products as a cancer treatment in interstate commerce.

8

29.     It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury would and did take steps to conceal from the FDA, cancer patients, and others that products they were manufacturing, labeling, marketing, selling, and distributing as PNC-27 were adulterated and misbranded.

### *Purchases from GL Biochem*

30.     It was a part of the conspiracy that defendant **PATRICK CHARLES BISHOP** would and did place orders to GL Biochem to produce large quantities of PNC-27.

31.     It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** would and did send purchase invoices to GL Biochem under the business name Best Peptide Supply, LLC.

32.     It was a further part of the conspiracy that those invoices did not use the term "PNC-27."

33.     It was a further part of the conspiracy that certain of those invoices contained the statement "FOR RESEARCH ONLY."

34.     It was a further part of the conspiracy that, at least until some point in or about 2016, defendant **PATRICK CHARLES BISHOP** did not independently test, or cause to be tested, the product he purchased from GL Biochem to assure that

it contained PNC-27, or to determine the percentage or purity level of PNC-27 it contained.

35.   It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** directed the product he purchased from GL Biochem to be shipped to locations in Birmingham, Alabama, including residences of defendant **PATRICK CHARLES BISHOP**, all within the Northern District of Alabama.

36.   It was a further part of the conspiracy that, between 2015 and 2016, defendant **PATRICK CHARLES BISHOP** paid GL Biochem more than $600,000 using wire transfers from various bank accounts that he controlled, including a Bank of America account in the name of Patrick, LLC and a Bank of America account in the name of Patrick C Bishop.

37.   It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** falsely represented to GL Biochem personnel that the product he was purchasing from GL Biochem would be used only for research purposes.

38.   It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** falsely certified to GL Biochem that the product he was purchasing from GL Biochem was "restricted to laboratory research purposes, excluding clinical research on [the] human body."

39.   It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** falsely represented to FDA personnel that product shipped

from GL Biochem to him was to be used for laboratory testing and scientific research.

### *Manufacture of PNC-27 Drug Products*

40.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury used the product they received from GL Biochem to make PNC-27 drug products intended for human use to treat cancer.

41.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** arranged to and did send PNC-27 to an individual outside the state of Alabama to be processed into a water-based PNC-27 drug product and sent back to defendant **PATRICK CHARLES BISHOP**.

42.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** received water-based PNC-27 drug products, which he stored, labeled, marketed, sold, and distributed to individuals outside the state of Alabama as a cancer treatment.

43.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** made and caused others known and unknown to the grand jury to make suppositories containing PNC-27 intended to treat cancer in the kitchen of his house and in a warehouse, located in the Birmingham, Alabama, area, within the Northern District of Alabama.  A suppository is a medication in a solid, roughly

conical or cylindrical shape, designed to be inserted into an orifice of the human body to dissolve.

44.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** did not use quality control measures to determine the composition, strength, and purity level of the drug products he made and caused others known and unknown to the grand jury to make.

45.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** used methods, controls, and facilities to make these PNC-27 drug products that did not conform to current good manufacturing practice.

46.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** knew that these PNC-27 drug products did not conform to current good manufacturing practice.

47.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** prepared and stored these PNC-27 drug products in insanitary conditions in which they could be and were contaminated with bacteria or other filth.

48.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** made material false statements and omissions to customers, including cancer patients and their family members, regarding the conditions in which he and others known and unknown to the grand jury made and stored PNC-27 drug products.

*Marketing, Sale, and Distribution of PNC-27 Drug Products*

49.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury marketed PNC-27 drug products as a treatment for cancer.

50.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** promoted himself as a person knowledgeable about PNC-27's effects on cancer cells.

51.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** held himself out as a "research director" and as a member of a "research team."

52.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** caused to be maintained a website, www.pnc27.com, that promoted PNC-27 as a treatment for cancer and provided an avenue for readers to submit their contact information through the website in order to receive additional information.

53.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** caused inquiries submitted through the website www.pnc27.com to be forwarded to email accounts to which he had access.

54.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** caused to be published on the website www.pnc27.com

various false or unproven assertions about PNC-27, including that "PNC can effectively treat any kind of cancer"; that "PNC-27 is non-toxic"; and that "[m]ultiple studies in laboratories and on humans have been successfully conducted."

55.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** directed individuals and entities to sign non-disclosure agreements to prevent disclosure of information regarding PNC-27.

56.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury sold PNC-27 drug products to individuals within and outside the United States.

57.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** received millions of dollars in payments for PNC-27 drug products, which he used to acquire houses, luxury vehicles, and other items.

58.    It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury sold PNC-27 drug products to Hope4Cancer for use in treating patients with cancer at Hope4 Cancer clinics in Mexico and elsewhere.

59.    It was a further part of the conspiracy that, between 2015 and 2016, defendant **PATRICK CHARLES BISHOP** received more than $3,500,000 in payments from Hope4Cancer.

14

60.     It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury caused PNC-27 drug products to be sent from the Birmingham, Alabama, area to individuals in other states and countries.

61.     It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury would and did use various terms, including "research," "sample," "ICRP," and "ICRPstudy.com," on product labels and shipping documentation to conceal that they were selling and distributing PNC-27 in interstate commerce for the treatment of cancer.

62.     It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury would and did ship PNC-27 drug products in interstate commerce that did not contain any directions for safe use.

63.     It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury made material false statements and omissions regarding PNC-27 drug products, including conditions of manufacture, potential side effects, and adverse events associated with use.

15

64.     It was a further part of the conspiracy that defendant **PATRICK CHARLES BISHOP** would and did instruct customers regarding how to conceal the intended use of PNC-27 drug products they received from defendant **PATRICK CHARLES BISHOP**.

## Overt Acts

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendant **PATRICK CHARLES BISHOP** and others known and unknown to the grand jury committed, and caused to be committed, the following overt acts, among others, within the Northern District of Alabama and elsewhere:

65.     On or about September 7, 2015, after GL Biochem personnel stated that GL Biochem did not have a certificate of good manufacturing practice ("GMP certificate") for the peptide it was producing for defendant **PATRICK CHARLES BISHOP**, defendant **PATRICK CHARLES BISHOP** responded, "Understood no problem."

66.     On or about September 14, 2015, defendant **PATRICK CHARLES BISHOP** sent an email to Hope4Cancer personnel stating, "As we discussed there is a necessity for me to take a less visible role in marketing of PNC. . . . [W]e get leads each day from the websites that come in both from physicians and from clients. I would like to ship the client leads to your office for first processing."

67.     On or about October 2, 2015, defendant **PATRICK CHARLES BISHOP** sent an email to Hope4Cancer personnel regarding a shipment of PNC-27 suppositories, and stating that "[w]e expect to have the lab check it today and we expect them to begin production of product today."

68.     On or about October 9, 2015, defendant **PATRICK CHARLES BISHOP** sent an email to GL Biochem personnel stating, "My need is about to significantly grow as well.  I think we will be asking for 500 grams per month within three months based on indications I have been working on.  The veterinary market for our peptide is greatly expanding due to a recent study."

69.     On or about November 13, 2015, defendant **PATRICK CHARLES BISHOP** stated to K.C. in an email, "I need to stay under the radar—that requirement precedes any decision going forward."

70.     On or about December 10, 2015, defendant **PATRICK CHARLES BISHOP** sent an email to Employee 1 instructing Employee 1 to ship PNC-27 suppositories to an individual in Colorado.

71.     On or about January 7, 2016, Employee 2 sent an email to V.W., copying defendant **PATRICK CHARLES BISHOP**, that stated, "Please take the advertisement of PNC-27 down from your website."

72.     On or about January 7, 2016, in a reply email, defendant **PATRICK CHARLES BISHOP** wrote, "just a quick note to let you know the why—the issue

17

is potential action by authorities we are working to avoid as others we have spoken with have provided specific examples."

73.    On or about February 11, 2016, in response to an email from V.W. asking whether there would be any "problems shipping to Pakistan or Singapore," defendant **PATRICK CHARLES BISHOP** replied, "We should ship tennis shoes or a sweater as a gift with some interesting packaging so usually we don't have any problems."

74.    On or about April 1, 2016, defendant **PATRICK CHARLES BISHOP** sent an email to A.T., a patient with a cancerous tumor on her face and neck, in which defendant **PATRICK CHARLES BISHOP** claimed that "the more aggressive the cancer the better PNC works against it."

75.    Later on or about April 1, 2016, defendant **PATRICK CHARLES BISHOP** assured A.T. that she could "expect" her tumor "to get larger while it is under attack" from PNC-27.

76.    On or about April 19, 2016, defendant **PATRICK CHARLES BISHOP** sent an email to GL Biochem personnel attaching a signed certification that the product he was purchasing from GL Biochem would be "restricted to laboratory research purposes" and not for "human usage."

77.    On or about April 22, 2016, defendant **PATRICK CHARLES BISHOP** sent an email to DHL personnel attaching a Toxic Substance Control Act

certification certifying that a shipment from GL Biochem contained "peptide (acyclic) for lab research only."

78.    On or about May 16, 2016, in response to an email from Hope4Cancer personnel titled "Re: PNC suppository packs," regarding "several packs (at least 1 per shipment) with hair in them," defendant **PATRICK CHARLES BISHOP** replied, "We will report it to the lab and we will replace the ones that were affected."

79.    On or about May 27, 2016, in response to a question from Employee 2 about how to respond to a patient experiencing fatigue, chills, and feverishness after using PNC-27 suppositories, defendant **PATRICK CHARLES BISHOP** provided the following answer for Employee 2 to relay to the patient:  "No side effects[.]  The killing of cancer cells causes toxicity and that is manageable and that is probably what you are dealing with in regard to the fatigue . . . ."

80.    On or about August 23, 2016, defendant **PATRICK CHARLES BISHOP** sent an email to FDA personnel regarding a shipment of PNC-27 from GL Biochem that had been detained in a facility in Ohio.  In the email, defendant **PATRICK CHARLES BISHOP** falsely stated that the "package coming from China contains proteins bound for laboratory testing facilities in New York – the package is both critical to the scientific work being completed and time sensitive . . . ."

81.   On or about August 30, 2016, defendant **PATRICK CHARLES BISHOP** sent an email to GL Biochem personnel asking, "When you receive the package back is it possible to try to ship 50 grams under a different shippers name? The FDA has flagged GL biochem and it is on a watch list."

82.   On or about August 31, 2016, defendant **PATRICK CHARLES BISHOP** sent an email to GL Biochem personnel asking for the product to be shipped to a university in Hungary and marked "NON COMMERCIAL RESEARCH SAMPLES."

83.   On or about September 12, 2016, defendant **PATRICK CHARLES BISHOP** sent an email to GL Biochem personnel stating, "We need it badly and it will ship from Hungary to us from the University so we know it will get through."

84.   On or about September 14, 2016, defendant **PATRICK CHARLES BISHOP** caused to be mailed a FedEx package from Hoover, Alabama, to a location in Atlanta, Georgia.  The return address on the package was to "Patrick Bishop, ICRP," in Hoover, Alabama.  The package contained 64 unlabeled suppositories in white packaging.

85.   On or about September 28, 2016, defendant **PATRICK CHARLES BISHOP** sent an email to Hope4Cancer personnel stating, "We have the entire suppository process now operational and the results are really exiting – no more leaks, perfect seals and very proper looking product. . . . The lab will be producing

another batch of 60 to 80 suppositories in the next few days."

All in violation of Title 18, United States Code, Section 371.

## Counts Two through Three
## Introduction into Interstate Commerce of an Adulterated Drug
## Title 21, United States Code, Sections 331(a) and 333(a)(2), and Title 18, United States Code, Section 2

86.    The factual allegations of paragraphs 1 through 85 of this indictment are re-alleged as though fully set forth herein.

87.    On or about the date set forth below for the count listed in the table below, in the Northern District of Alabama, and elsewhere, defendant

## PATRICK CHARLES BISHOP,

aided and abetted by and aiding and abetting others known and unknown to the grand jury, with intent to defraud and mislead, introduced and delivered for introduction into, and caused the introduction and delivery for introduction into, interstate commerce, drugs, namely, PNC-27, that were adulterated within the meaning of Title 21, United States Code, Section 351(a):

| COUNT | APPROXIMATE DATE OF MAILING | INTRODUCTION INTO INTERSTATE COMMERCE |
|-------|------------------------------|----------------------------------------|
| 2 | 7/21/2016 | Via FedEx from Hoover, Alabama to Jamul, California |
| 3 | 9/12/2016 | Via FedEx from Hoover, Alabama to Ashburn, Virginia |

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2) and Title 18, United States Code, Section 2.

21

**Count Four**
**Introduction into Interstate Commerce of Misbranded Drugs**
**Title 21, United States Code, Sections 331(a) and 333(a)(2), and Title 18,**
**United States Code, Section 2**

88.     The factual allegations of paragraphs 1 through 85 of this indictment

are re-alleged as though fully set forth herein.

89.     On or about the date set forth below for the count listed in the table

below, in the Northern District of Alabama, and elsewhere, defendant

**PATRICK CHARLES BISHOP,**

aided and abetted by and aiding and abetting others known and unknown to the grand

jury, with intent to defraud and mislead, introduced and delivered for introduction

into, and caused the introduction and delivery for introduction into, interstate

commerce, drugs, namely, PNC-27, that were misbranded within the meaning of

Title 21, United States Code, Section 352(f)(1), in that the drugs' respective labeling

did not bear adequate directions for use:

| COUNT | APPROXIMATE DATE OF MAILING | INTRODUCTION INTO INTERSTATE COMMERCE |
|---|---|---|
| 4 | 9/14/2016 | Via FedEx from Hoover, Alabama to Atlanta, Georgia |

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2), and

Title 18, United States Code, Section 2.

**Counts Five through Thirteen**
**Obtaining and Attempting to Obtain Pre-Retail Medical Product by Fraud**
**Title 18, United States Code, Section 670(a)(1), (a)(6), and (c)(2), and Section 2**

90.     The factual allegations of paragraphs 1 through 85 of this indictment are re-alleged as though fully set forth herein.

91.     On or about the date set forth below for each count listed in the table below, each such date constituting a separate count of this indictment, in the Northern District of Alabama, and elsewhere, defendant

**PATRICK CHARLES BISHOP,**

in and using a means and facility of interstate and foreign commerce, attempted to obtain, did obtain, and aided and abetted others in obtaining by fraud and deception a pre-retail medical product, that is, the drug PNC-27, with a value of greater than $5,000, in violation of Title 18, United States Code, Section 670(a)(1), (a)(6), and (c)(2), and Section 2.

| Count | DHL Shipment Number | Approximate Shipment Date | Approximate Receipt Date |
|---|---|---|---|
| 5 | 4718729691 | 10/26/2015 | 11/2/2015 |
| 6 | 4017453650 | 10/26/2015 | 11/2/2015 |
| 7 | 6044451814 | 2/2/2016 | 2/5/2016 |
| 8 | 9557821851 | 4/20/2016 | 4/25/2016 |
| 9 | 4295092362 | 5/5/2016 | 5/9/2016 |
| 10 | 5250859880 | 6/1/2016 | 6/6/2016 |
| 11 | 2106924046 | 7/15/2016 | 7/18/2016 |
| 12 | 9927684771 | 7/29/2016 | 8/1/2016 |
| 13 | 6486269904 | 9/14/2016 | 9/16/2016 |

All in violation of Title 18, United States Code, Section 670(a)(1), (a)(6), and (c)(2),

and Section 2.

## Counts Fourteen through Fifteen
## Falsely Making, Altering, Forging, or Counterfeiting the Labeling or Documentation of Pre-Retail Medical Product
## Title 18, United States Code, Section 670(a)(2) and (c)(2) and Section 2

92.     The factual allegations of paragraphs 1 through 85 of this indictment are re-alleged as though fully set forth herein.

93.     On or about the date set forth below for the count listed in the table below, in the Northern District of Alabama, and elsewhere, defendant

### PATRICK CHARLES BISHOP,

in and using a means and facility of interstate and foreign commerce, caused to be falsely made, altered, forged, or counterfeited, and aided and abetted others in doing the same, the labeling or documentation of a pre-retail medical product, that is, the drug PNC-27, with a value of greater than $5,000, in violation of Title 18, United States Code, Section 670(a)(2) and (c)(2) and Section 2.

| Count | Date | Act |
|-------|------|-----|
| 14 | 4/19/2016 | Email to GL Biochem attaching signed certification that PNC-27 would be "restricted to laboratory research purposes" and not for "human usage" |
| 15 | 4/22/2016 | Email to DHL personnel attaching "form from Manufacturer" certifying that the "product's complete, exact, intended use" is "Peptide (acyclic) for lab research use only" |

24

All in violation of Title 18, United States Code, Section 670(a)(2) and (c)(2) and Section 2.

**Counts Sixteen through Twenty-Eight**
**Knowingly Possessing, Transporting, or Trafficking in Pre-Retail Medical**
**Product Involved in Violation of Section 670(a)(1) or (2)**
**Title 18, United States Code, Section 670(a)(3) and (c)(2) and Section 2**

94.     The factual allegations of paragraphs 1 through 93 of this indictment are re-alleged as though fully set forth herein.

95.     On or about the date set forth below for each count listed in the table below, each such date constituting a separate count of this indictment, in the Northern District of Alabama, and elsewhere, defendant

**PATRICK CHARLES BISHOP,**

in and using a means and facility of interstate and foreign commerce, knowingly possessed, transported, and trafficked in, and aided and abetted others in doing the same, a pre-retail medical product involved in a violation of Section 670(a)(1) or (2), that is, the drug PNC-27, with a value of greater than $5,000, in violation of Title 18, United States Code, Section 670(a)(2) and (c)(2).

| Count | Date | Act |
|-------|------|-----|
| 16 | 11/2/2015 | Receipt of DHL shipment number 4718729691 |
| 17 | 11/2/2015 | Receipt of DHL shipment number 4017453650 |
| 18 | 2/5/2016 | Receipt of DHL shipment number 6044451814 |
| 19 | 4/7/2016 | Preparation of PNC-27 suppositories for customer W.N. |
| 20 | 4/25/2016 | Receipt of DHL shipment number 9557821851 |
| 21 | 5/9/2016 | Receipt of DHL shipment number 4295092362 |

| 22 | 6/1/2016 | Shipment of PNC-27 drug products via FedEx from Patrick Bishop, ICRP, Hoover, Alabama, to J.K. in Roswell, Georgia |
| 23 | 6/6/2016 | Receipt of DHL shipment number 5250859880 |
| 24 | 6/8/2016 | Shipment of PNC-27 via FedEx from Patrick Bishop, ICRP, Hoover, Alabama, to Dose of Nature, Provo, Utah |
| 25 | 7/18/2016 | Receipt of DHL shipment number 2106924046 |
| 26 | 8/1/2016 | Receipt of DHL shipment number 9927684771 |
| 27 | 9/14/2016 | Shipment via FedEx from Patrick Bishop, ICRP, Hoover, Alabama, to R.K. in Atlanta, Georgia |
| 28 | 9/16/2016 | Receipt of DHL shipment number 6486269904 |

All in violation of Title 18, United States Code, Section 670(a)(3) and (c)(2) and Section 2.

### FIRST NOTICE OF FORFEITURE
### Title 18, United States Code, Section 982(a)(7)

1.      The allegations contained in counts one through four are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(7).

2.      Upon conviction of the offenses set forth in counts one through four of this indictment, defendant

### PATRICK CHARLES BISHOP

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived from gross proceeds traceable to the commission of the offenses.  The property to be forfeited includes but is not limited to a money judgment in the amount of $3,512,637.

26

3.      If any of the property described above, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853.

## SECOND NOTICE OF FORFEITURE
### Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c)

4.      The allegations contained in counts five through twenty-eight are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

5.      Upon conviction of the offenses in violation of Title 18, United States Code, Section 670, set forth in counts five through twenty-eight of this indictment, defendant

**PATRICK CHARLES BISHOP**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes the value of pre-retail medical products obtained in violation of Title 18, United States Code, Section 670, including but not limited to a money judgment in the amount of $608,920.

6.     If any of the property described above, as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

*/s/ Electronic Signature*

_____
FOREPERSON OF THE GRAND JURY

PRIM F. ESCALONA
United States Attorney

*/s/ Electronic Signature*

_____
WILLIAM R. CHAMBERS
Assistant United States Attorney