FILED

2021 Jan-07  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

JAN 07 2021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **2:20-cr-258-KOB-GMB** |
| | ) | |
| **PATRICK CHARLES BISHOP** | ) | |

## PLEA AGREEMENT

The government and the defendant, Patrick Charles Bishop, hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to: (1) plead guilty to **COUNT ONE** of the indictment filed in the above-numbered and -captioned matter; (2) consent to the entry of a forfeiture judgment against him as discussed below; and (3) waive certain of his rights to direct appeal and collateral attack as outlined in section **IV** of this agreement.   In exchange, the United States Attorney, acting on behalf of the government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in sections **VIII** and **IX**.

Defendant's Initials

## TERMS OF THE AGREEMENT

### I.    MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for the crime of Conspiracy, in violation of Title 18, United States Code, Section 371, as charged in **COUNT ONE**, is:

A.    Imprisonment for not more than 5 years, or

B.    A fine of not more than $250,000, or

C.    Both A and B;

D.    Criminal forfeiture;

E.    Supervised release of not more than three years; and

F.    A special assessment fee of $100.

### II.    FACTUAL BASIS FOR PLEA

The government is prepared to prove, at a minimum, the following facts at the trial of this case:

The defendant resides in the Northern District of Alabama.  He has no formal training or advanced education in medicine or in the treatment of diseases such as cancer.  He owns Patrick, LLC.  During at least 2015 and 2016, the defendant employed other individuals through Patrick, LLC.  None of these individuals had any formal training or advanced education in medicine or in the treatment of diseases

Defendant's Initials _____

such as cancer.  During the period charged in the indictment, the defendant conspired with these individuals and others to defraud the FDA of its lawful functions in regulating, reviewing, and approving drugs distributed in the United States, and to introduce misbranded and adulterated drug products—specifically, PNC-27—into interstate commerce with the intent to defraud or mislead the FDA and consumers.

### PNC-27

PNC-27 is a peptide purportedly named for a researcher who developed it. Peptides are chemical compounds consisting of amino acids linked in chains.  The FDA has not approved PNC-27 for use in the United States as a drug to treat any disease, including any form of cancer.

### Purchases of PNC-27

During the period charged in the indictment, the defendant ordered large quantities of PNC-27 from GL Biochem (Shanghai), Ltd., a supplier based in China. GL Biochem markets itself as a worldwide producer of research chemicals, including peptide reagents, custom peptides, and antibodies.  The defendant used the business name Best Peptide Supply, LLC, to order PNC-27 from GL Biochem.  At least until some point in 2016, the defendant did not independently test or cause to be tested the product he purchased from GL Biochem to assure that it contained PNC-27 or to determine the percentage or purity level of PNC-27 it contained.  The

Defendant's Initials

defendant maintains that it was his understanding that each delivery of product from GL Biochem had been tested by GL Biochem, and documents supporting this understanding accompanied each shipment. The defendant knew that the product he purchased from GL Biochem was not manufactured in conformity to current good manufacturing practice.

The defendant obtained PNC-27 under the false pretense that he intended to use the product solely for laboratory research purposes. He provided invoices to GL Biochem that did not use the term "PNC-27," and included the statement "FOR RESEARCH ONLY." The defendant falsely certified to GL Biochem that the product he was purchasing from GL Biochem was "restricted to laboratory research purposes, excluding clinical research on [the] human body." The defendant also falsely represented to FDA personnel that product shipped from GL Biochem to him was to be used for laboratory testing and scientific research.

The defendant directed GL Biochem to ship the product he purchased to locations in Birmingham, Alabama, including residences of the defendant, all within the Northern District of Alabama. The defendant paid GL Biochem for the product using wire transfers from various bank accounts that he controlled.

Defendant's Initials

### *Manufacture of PNC-27 Drug Products*

During the period charged in the indictment, the defendant used the PNC-27 he obtained from GL Biochem to manufacture PNC-27 drug products intended for human use to treat cancer. He also caused PNC-27 from GL Biochem to be processed into a water-based PNC-27 drug product, also intended for human use to treat cancer.

The defendant and others made suppositories with PNC-27 he obtained from GL Biochem. A suppository is a medication in a solid, roughly conical or cylindrical shape, designed to be inserted into an orifice of the human body to dissolve. The suppositories the defendant made were intended for human use to treat cancer. The defendant and others made these suppositories in his residence and in a warehouse he leased, both in the Birmingham, Alabama, area, within the Northern District of Alabama.

The defendant did not use quality control measures to determine the composition, strength, or purity level of the drug products he and others made with the product he obtained from GL Biochem. The defendant was aware of good manufacturing practice, and knew that the methods, controls, and facilities the defendant used and directed others to use to make these PNC-27 drug products did not conform to good manufacturing practice. These PNC-27 drug products were

Defendant's Initials _____

manufactured and stored in non-sterile conditions, where they were subject to the risk of bacterial contamination.

The defendant did not reveal to customers the conditions in which he and others made and stored PNC-27 drug products. In communications with customers, the defendant described the place where the suppositories were made as a "lab"; in fact, the suppositories were made in the kitchen of the defendant's house and in a warehouse he leased. The defendant did not disclose to customers that PNC-27 drug products he distributed to them had been made in a non-sterile environment without quality control measures in place.

### Marketing, Sale, and Distribution of PNC-27 Drug Products

The defendant and others marketed, sold, and distributed the PNC-27 drug products described above to individuals in other states and countries. The defendant and others caused some PNC-27 drug products to be shipped in interstate commerce without any directions for use or labeling whatsoever.

The defendant marketed, sold, and distributed PNC-27 drug products as a treatment for cancer knowing that PNC-27 was not approved by the FDA for use as a drug to treat any disease. The defendant marketed, sold, and distributed these products knowing that the FDA had not approved any directions for their safe use. The defendant marketed, sold, and distributed these products knowing that they had

Defendant's Initials

not been made in conformity to current good manufacturing practice, and that they had been prepared, packed, and held in non-sterile conditions that subjected them to contamination with bacteria or filth.

The defendant and others took steps to avoid detection by the FDA or other authorities of their manufacture, labeling, marketing, selling, and distributing of PNC-27 drug products as a human cancer treatment in interstate commerce. The defendant and others also took steps to conceal from the FDA, customers, and others that products they were manufacturing, labeling, marketing, selling, and distributing as PNC-27 were adulterated and misbranded.

The defendant directed individuals and entities to sign non-disclosure agreements to prevent disclosure of information regarding PNC-27. The defendant used the name Immuno Cellular Restoration Program, Inc. (ICRP), as a business name under which he and others sold and distributed PNC-27 drug products. The defendant promoted himself as a person knowledgeable about PNC-27's effects on cancer cells. He held himself out as a "research director" and as a member of a "research team." The defendant and others used various terms, including "research," "sample," "ICRP," and "ICRPstudy.com," on product labels and shipping documentation to conceal that they were selling and distributing PNC-27 in interstate commerce to treat individuals for cancer. The defendant instructed

Defendant's Initials _____

customers regarding how to conceal the intended use of PNC-27 drug products they received from him.

The defendant caused to be maintained a website, www.pnc27.com, that promoted PNC-27 as a treatment for cancer and provided an avenue for readers to submit their contact information through the website in order to receive additional information. The defendant caused inquiries submitted through the website www.pnc27.com to be forwarded to email accounts to which he had access. The defendant caused to be published on the website www.pnc27.com various unproven assertions about PNC-27, including that "PNC can effectively treat any kind of cancer" and that "PNC-27 is non-toxic." The defendant was aware of possible adverse events and side effects that certain individuals who had taken PNC-27 had experienced, although he maintains that PNC-27 is generally non-toxic and side effects, if any, are mild. When marketing, selling, and distributing PNC-27 drug products, the defendant did not disclose these possible adverse events and side effects.

The defendant and others sold and distributed PNC-27 drug products to individuals in other states and countries. The defendant received millions of dollars in payments for PNC-27 drug products, which he used to acquire houses, luxury vehicles, and other items. Approximately $594,763.64 of proceeds from the

Defendant's Initials _____

defendant's sales of PNC-27 drug products were used to purchase property located at 5655 Lake Trace Drive, Hoover, Alabama.  Approximately $275,400 of proceeds from the defendant's sales of PNC-27 drug products were used to purchase property located at 1270 Eagle Park Road, Birmingham, Alabama.

The parties stipulate that the loss amount attributable to the defendant from **COUNT ONE** of the indictment is between $1.5 million and $3.5 million.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence.  The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

**PATRICK CHARLES BISHOP**

## III.    **RECOMMENDED SENTENCE**

Subject to the limitations in section **VIII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the government will recommend the following disposition:

A.    That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

Defendant's Initials

B.    That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term no higher than 18 months' incarceration;

C.    That, following any term of imprisonment that is imposed, the defendant be placed on supervised release for a period to be determined by the Court, subject to the standard conditions of supervised release set forth in U.S.S.G. § 5D1.3, and the following special condition:  The defendant shall not establish any new lines of credit without permission from the United States Probation Office or the Court;

D.    That the defendant be required to pay a fine in accordance with the Sentencing Guidelines if the Court determines he has the ability to do so, with that amount due and owing as of the date sentence is pronounced, and with any outstanding balance to be paid in full by the expiration of the term of supervised release; and

E.    That the defendant pay a special assessment fee of $100, with that amount due and owing as of the date sentence is pronounced.

Defendant's Initials

## IV.  WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, PATRICK CHARLES BISHOP, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up my right to argue that: (1) the statute to which I am pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of this statute. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding the following:

A.  Any sentence imposed in excess of the applicable statutory maximum sentence(s);

B.  Any sentence imposed in excess of the Guidelines sentencing range determined by the Court at the time sentence is imposed; and

C.  Ineffective assistance of counsel.

Page **11** of **24**                    Defendant's Initials _____

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

**I, PATRICK CHARLES BISHOP, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

_____
**PATRICK CHARLES BISHOP**

## V.    UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the defendant that, in light of the United States Supreme Court's decision in *United States v. Booker*, the federal Sentencing Guidelines are **advisory** in nature.  Sentencing is in the Court's discretion and is no longer required to be within the Sentencing Guidelines range.  The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory Guidelines range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

Defendant's Initials

For purposes of the calculation of the defendant's United States Sentencing Guidelines range, the parties stipulate that they do not believe any enhancement, other than the enhancement for loss amount, will apply. Based on a loss amount between $1.5 million and $3.5 million and absent any other enhancements in United States Sentencing Guidelines Section 2B1.1, the parties agree that the defendant's total offense level, for Guidelines purposes, would be calculated as 19. The defendant expressly agrees and acknowledges, however, that it is the responsibility and role of the Court, not the parties, to determine the applicable Guidelines range in this case, and that the Court is not bound by the parties' understanding of the particular Guidelines provisions or enhancements that may or may not apply.

## VI.    AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT**, and that the Court is not required to accept the government's recommendation. Further, the defendant understands that, if the Court does not accept the government's recommendation, the defendant does not have the right to withdraw the guilty plea.

Defendant's Initials

## VII.  <u>VOIDING OF AGREEMENT</u>

The defendant understands that should the defendant move the Court to accept the defendant's plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), or tender a plea of *nolo contendere* to the charges, this agreement will become NULL and VOID.  In that event, the government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

## VIII.  <u>SUBSEQUENT CONDUCT</u>

**The defendant understands that, should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in section III of the agreement, but instead may make any recommendation deemed appropriate by the United States Attorney in her sole discretion.**

Defendant's Initials _____

## IX.    <u>OTHER DISTRICTS AND JURISDICTIONS</u>

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## X.    <u>COLLECTION OF FINANCIAL OBLIGATION</u>

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. The defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs. The defendant also agrees that the defendant's financial statement and disclosures will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials _____

## XI.  AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory Sentencing Guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors that may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

The defendant acknowledges that the Court may impose restitution at sentencing sufficient to compensate the victims of the defendant's offense, and that the restitution amount imposed at sentencing may be smaller than, equal to, or larger than the forfeiture judgment the parties have agreed to in this plea agreement.

Page **16** of **24**                          Defendant's Initials

## XII.  **FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS**

### Forfeiture

The defendant agrees to consent to the immediate entry of an order of forfeiture against him, pursuant to Federal Rule of Criminal Procedure 32.2(b)(l), of a money judgment against the defendant in the amount of $900,000.  The defendant agrees that the money judgment is or represents proceeds the defendant personally obtained, controlled, and benefitted from as a result of the offense alleged in **COUNT ONE** of the indictment and to which the defendant is indicating the defendant's desire to plead guilty by way of this written plea agreement.  For purposes of entering this order of forfeiture, the defendant acknowledges that a nexus exists between the above-specified money judgment and the criminal offense to which the defendant is pleading guilty.

The defendant further acknowledges that the defendant's right, title, and interest, whether personal or in the capacity of trustee, in (1) real property located at 1270 Eagle Park Drive, Birmingham, Alabama 35242,[1] and (2) real property located

---

[1] Legal Description: Lot 47, according to the Survey of Eagle Point, 12th Sector, Phase III, as recorded in Map Book 24, Page 102, in the Probate Office of Shelby County, Alabama; being situated in Shelby County, Alabama.  Mineral and mining rights excepted.

Defendant's Initials _____

at 5655 Lake Trace Drive, Hoover, Alabama 35244,[2] are or represent proceeds the defendant personally obtained, controlled, and benefitted from as a result of the offense alleged in **COUNT ONE** of the indictment and to which the defendant is indicating the defendant's desire to plead guilty by way of this written plea agreement. For purposes of entering this order of forfeiture, the defendant acknowledges that a nexus exists between the real property located at 1270 Eagle Park Drive, Birmingham, Alabama 35242, the real property located at 5655 Lake Trace Drive, Hoover, Alabama 35244, and the criminal offense to which the defendant is pleading guilty. The government and the defendant acknowledge that the government has the right to forfeiture of the defendant's interest, whether personal or in the capacity as trustee, in both properties for the purpose of satisfying the forfeiture judgment in this case.

The defendant agrees to pay at least $600,000 of the forfeiture judgment by January 1, 2023, or within one year of his release from prison, whichever is later. The defendant agrees that, if he fails to do so, the government is entitled to forfeiture of the defendant's interest, whether personal or in the capacity of trustee, in the real property located at 1270 Eagle Park Drive, Birmingham, Alabama 35242, and the

---

[2] Legal Description: Lot 2311, according to the Survey of Trace Crossings, 23rd Sector, as recorded in Map Book 38, Page 69, in the Probate Office of Jefferson County, Alabama, Bessemer Division.

Defendant's Initials

real property located at 5655 Lake Trace Drive, Hoover, Alabama 35244. In that event, the government agrees that it will apply the net proceeds realized from any sale of the real properties described above to reduce the amount of the money judgment specified above. The government agrees that, if the defendant complies with his agreement to pay at least $600,000 of the forfeiture judgment by January 1, 2023, or within one year of his release from prison, whichever is later, the government will not seek forfeiture of the defendant's interest in either of the above specified real properties, but reserves its right to collect the remaining balance of the forfeiture judgment in any other way.

The defendant acknowledges that if, due to an act or omission of the defendant, directly forfeitable property: (i) cannot be located upon the exercise of due diligence; (ii) has been transferred or sold to, or deposited with, a third party; (iii) has been placed beyond the jurisdiction of the court; (iv) has been substantially diminished in value; or (v) has been commingled with other property which cannot be divided without difficulty, as a result, the government is authorized under law to seek the forfeiture of any and all assets of the defendant as substitute assets for the purpose of satisfying the final order of forfeiture until that order is satisfied in full.

The defendant agrees to take all steps as requested by the government to pass clear title to forfeitable assets to the government, and to testify truthfully in any

Defendant's Initials _____

judicial forfeiture proceeding. The defendant hereby waives the requirements of Federal Rule of Criminal Procedure 32.2 regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Federal Rule of Criminal Procedure 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this plea agreement. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any double jeopardy challenges that the defendant may have to the entry of a forfeiture order before sentencing, and any claims, defenses or challenges arising under the excessive fines clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this indictment and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

Defendant's Initials _____

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

## Immigration Status Consequences

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including any attorney or the district court, can predict to a certainty the effect of conviction on immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of

Defendant's Initials _____

any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XIII. **DEFENDANT'S UNDERSTANDING**

I have read and understand the provisions of this agreement consisting of **24 pages**. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that, by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:



Defendant's Initials

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this agreement, both individually and as a total binding agreement.

_____
**DATE**

_____
**PATRICK CHARLES BISHOP**
**Defendant**

## XIV.  COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses.  My client has conveyed to me that he understands this agreement and consents to all its terms.  I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment.  I concur in the entry of the plea on the terms and conditions set forth herein.

_____
**DATE**

_____
**JIM STURDIVANT**
**Defendant's Counsel**

Defendant's Initials

## XV.  **GOVERNMENT'S ACKNOWLEDGMENT**

I have reviewed this matter and this agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

**PRIM F. ESCALONA**
**United States Attorney**

1/7/21
**DATE**

**JOHN B. WARD**
**Assistant United States Attorney**

Defendant's Initials ____