# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| PLAINTIFF, ) | |
| v. ) | CASE NO.: 2:20-cr-00258-KOB-GMB |
| PATRICK CHARLES BISHOP, ) | |
| DEFENDANT. ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the defendant, PATRICK CHARLES BISHOP, by and through undersigned counsel Jim Sturdivant, and hereby submits this Sentencing Memorandum for the Court's consideration regarding his upcoming sentencing, scheduled for May 5, 2021, before the Honorable Karon Bowdre, United States District Judge.

I.  **INTRODUCTION**

The factual basis surrounding Mr. Bishop's conduct is set forth in the Plea Agreement (Doc. 20, pp. 2-9), and also in the Presentence Investigation Report dated March 31, 2021 (hereinafter "PSR") at paragraphs 3-33. This Sentencing Memorandum is submitted on his behalf. As this Court is no doubt well aware, the Federal Sentencing Guidelines are not controlling upon the issue of whether or not Mr. Bishop receives a custodial sentence. *See*, *e.g., United States v. Booker*, 543

1

U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); <u>Nelson v. United States</u>, 555 U.S. 350 (2009); 18 U.S. Code §3553(a).

In this case, Mr. Bishop's Guidelines sentencing in terms of a custodial sentence is between thirty (30) and thirty-seven (37) months. The government has agreed in the plea agreement filed with the Court to recommend a custodial sentence of not greater than eighteen (18) months.

The defense submits, however, this is a case where, once the Court has applied all of the sentencing factors under 18 U.S. Code §3553(a), a six-month custodial sentence is entirely appropriate and "sufficient but not greater than necessary."

II.   **ANALYSIS OF THE §3553(a) FACTORS WITH RESPECT TO THIS CASE AND MR. BISHOP**

   A.   **The nature and circumstances of the offense**

The defendant is pleading guilty to a conspiracy to commit fraud. The defendant has acknowledged that the Government could prove the technical elements of the offenses for which he has plead guilty and acknowledged that his conduct did violate federal law. The loss amount is estimated to be between $1.5 million and $3.5 million.

   B.   **The history and characteristics of the defendant**

Mr. Bishop's father passed away at the age of fifty-two (52) from stomach cancer. Mr. Bishop's mother resides in a senior assisted living facility in

2

California. Mr. Bishop has an older brother that currently resides in California. Mr. Bishop also had another brother who passed away at the age of fifty-two (52) from pancreatic cancer.

Mr. Bishop has been happily married to his wife for thirty-three (33) years and has three (3) children, all of which are in their twenties. He is an active and devoted father to his children and has been a solid citizen of the Birmingham and Hoover communities since approximately 1985.

There is no evidence whatsoever that Mr. Bishop ever had any intent to harm anyone physically. Instead, Mr. Bishop had a strong desire to help patients suffering with cancer. Mr. Bishop's desire was fueled from the loss of his brother to pancreatic cancer. His brother's battle with cancer as well as his death had a profound effect on Mr. Bishop and he wished to help others as best he could.

What follows are selective excerpts from the letters received on behalf of Mr. Bishop that describe him as a faithful Christian, loving father and husband, valued and productive member of the community who generously contributes and gives back to his friends, community, church, and other charitable organizations on an ongoing basis.

> **From the letter of Dr. Jeffrey Dugas, Orthopedic Surgeon, Andrews Sports Medicine & Orthopaedic Center, attached hereto as Exhibit 1:**
>
> Pat is a man of sterling character whose primary drive in life is to use his intellectual gifts to serve humankind. Your Honor, I am glad to

provide my observations as you decide the just sentence for Patrick Bishop.

I am an Orthopedic Surgeon, Sports Medicine Specialist, and Managing Partner at the world-renowned Andrews Sports Medicine and Orthopedic Center in Birmingham. When Pat introduced me to his patented hydration technology, I was extremely impressed. He spoke with great passion for how Hydrosome could increase nutrient absorption in the human body. Pat showed me extensive data and studies to demonstrate the precise biological mechanisms that create the result. As a sports medicine specialist, I have conducted studies with Pat that show incredible promise.

Pat is diligent, intelligent, and driven to solve problems. I have personally experienced his inexhaustible energy and determination. In our water project, Pat brought on an associate with considerable compliance experience and expertise. Compliance is a primary guiding principle for the entire Hydrosome team. Looking back, I know that Pat wishes he would have assembled a team of compliance experts to help with his cancer treatment project. He clearly made a mistake when he broke the law, no matter how noble the cause.

Your Honor, Pat has approached this legal process with a spirit of humility and acceptance. I hope this court will examine the full context of Pat's illegal acts. I strongly encourage this court to show mercy to Patrick Bishop at sentencing.

**From the letter of Stephanie Bishop, wife, attached hereto as Exhibit 2:**

In all our discussions, he has never placed the blame on anyone but himself. I will always remember his clarity and strength as he prepared for this sentencing hearing.

Pat and I met in 1986 on the night of a neighborhood house fire. Neighbors ran into the street to watch the commotion. When I came out, the first thing I saw was Pat trying to put the blaze out with a garden hose. My first memory of my husband captures so much of his essential character. Pat's first instinct is to run to a problem then see what he can do to help. I have seen many displays of Pat's bravery and boldness over the course of the past thirty-five years.

After Jerry's death, Pat grieved and fell into a depression. Pat also felt fear, since cancer had taken his father and grandfather years earlier. I think Pat was afraid that he would be next. All those strong emotions flowed into his determination to find an effective cancer treatment.

In my heart, I am sure that Pat's sole motivation was to relieve suffering. Pat's desire to serve others is his basic, defining characteristic. He will always run toward the fire if he can help.

Your Honor, I am very proud to stand with my husband today. We have a beautiful life together and I look forward to the many years still to come.

**From the letter of Alicia Bishop, daughter, attached hereto as Exhibit 3:**

This legal process has been a powerful learning opportunity for my entire family to grow. My dad, Patrick Bishop, has been transparent about his legal case from the beginning. He showed me the counts in the initial paperwork and told me exactly what happened. My dad shared specific details and invited me to attend his plea hearing. I am proud of how my dad took responsibility for his unlawful acts with dignity and grace. We have learned the powerful lesson that empathy needs boundaries to help without hurting.

One of my earliest memories is of my dad coming to the aid of a stranger. We were driving down the freeway in the pouring rain when the car ahead of us slid off the road. Dad pulled onto the shoulder and got out to help. As he worked in the rain, the driver sat in our car with us. She was grateful, and a little baffled, by my dad's selflessness. After getting her car back on the road, my dad told us that he hoped someone would be there for us to do the same. He treats everyone like family. His willingness to suffer on behalf of a total stranger made a huge impression on me.

Many friends and family members have turned to my dad in times of trouble or financial stress. He is gracious and generous to anyone who calls, reminding me to be gracious to others and to myself. Dad lives out his faith. He devotes himself to serving others and never turns away a suffering neighbor. My dad's cancer treatment project was the perfect example of this compassion.

Dad was absorbed with the cancer world because he wanted to help, the intensity of it was keeping him awake.

Your Honor, I hope you will remember all the people my dad helped over the course of his life. Please show my dad mercy at his sentencing hearing.

**From the letter of Ann Claire Bishop, daughter in law, attached hereto as Exhibit 4:**

My name is Ann Claire Bishop and Patrick Bishop is my father-in-law. I am writing to share my thoughts as this Honorable Court decides Pat's sentence. Pat is the first to admit that he broke the law. He has shown me that stepping over a legal line has consequences. I will never forget his clarity and forthrightness as he acknowledged his mistakes. Through this ordeal, Pat taught me how to be humble and brave at the same time.

I observed Pat during his time working with cancer victims and their families. He answered phone calls any time of day. He sent emails with words of encouragement or information about living a healthier lifestyle. Pat took trips around the world investigating the reports of treatments and their validity. Pat did not just engage with victims about their medical condition, he worked with physicians to provide medical diagnosis and treatment. He offered emotional support and words of wisdom. He shared his story about how his brother died of cancer. Pat knew how it felt to watch a family member suffer and succumb to their illness. He devoted himself to each family like they were his neighbor. Pat saw each victim as a precious soul, worthy of the best possible care. His fear of cancer is generational as it took his Grandfather, father and brother all at the same age of 52 years old.

**From the letter of Dr. William E. Jackson, III, Professor of Finance and Management at the University of Alabama, attached hereto as Exhibit 5:**

Patrick and I have prayed together about his legal trouble. He spoke frankly about his legal violations and blamed no one but himself for using such poor judgement.

Patrick and I have spent many hours in thoughtful conversation. He is a strong family man who is committed to using his many talents for

6

good. He offered to speak to my students about his experiences with venture capital, specifically how to deal with detailed term sheets. His idea of entrepreneurship is not focused on only accumulating material wealth. Rather, Patrick marshals his creativity, intellect, and passion to seek higher purpose and serve humanity. As a professor of business ethics, I admire Patrick's values and look forward to introducing him to my students.

Patrick has a fine reputation in our community. He is a real asset who will undoubtedly make positive contributions to society in the years ahead.

### From the letter of Mick Vigneulle, friend, attached hereto as Exhibit 6:

My name is Mick Vigneulle and I have known Patrick Bishop for almost twenty years. Soon after his legal trouble started, he told me about his case in person. Pat acknowledged what he did and he did not hide the truth and did not minimize the seriousness of his case.

Pat knew what it meant to grieve, especially after losing his brother, Jerry. I knew Jerry and saw how close he and Pat were. They were best friends and always together. After Jerry died of cancer I saw Pat change in many ways. He wanted to honor his brother and do whatever possible to help cancer patients and their families. At church, Pat reached out to families going through a cancer battle. He offered his prayers and his experiences as a resource. Pat is driven by a desire to relieve the suffering of others. I have experienced that up close during my darkest moments of grief.

As a faithful Christian, Pat makes generous donations to multiple Christian ministries, including my youth education ministry. Pat is a very giving individual who truly lives a life of charity and neighborly love. I know how blessed I am to know Pat as a friend.

Your honor, please review Pat's extraordinary record of work and service to others. He is a force for good in our community and that will never change.

**From the letter of James L.E. Terry, AIA, CASp, friend and business owner, attached hereto as Exhibit 7:**

Since the passage of the Americans with Disabilities Act of 1990, I have devoted much of my career to ADA architectural compliance. I am currently advising the United States Department of Justice on approximately a dozen active ADA investigations. I teach seminars for national organizations that train ADA specialists in strict regulatory compliance. When Pat Bishop disclosed the details of his legal trouble, I knew that he would face consequences for his failure to follow the law. Pat spoke honestly about the exact nature of his case and took full responsibility for his actions. I admire Pat very much and am proud to stand with him as he prepares for his sentencing hearing.

I met Pat over 20 years ago at the Shades Mountain Independent Church (now the Shades Mountain Community Church). I appreciated his sincerity and intelligence, particularly when sharing his business insights with me.

To serve our industry and the public, my firm designed a website to provide comprehensive ADA compliance information. Pat routinely offered expert technical advice during that lengthy development process. He never asked for payment despite the quality and value of his input.

I serve on the Local Advisory Board of the Central Alabama Chapter of Mission Increase Foundation. MIF provides free training and consulting services to over 125 local non-profits and ministries in the Birmingham and Tuscaloosa areas. I recently mentioned to Kevin Moore, our Area Director, that we needed to update the https://servemycity.com website we inherited from Mission Birmingham where he served before corning to MIF. He asked me if I knew that Pat Bishop had offered him advice about how to make his idea for that website a reality. Pat located a programmer for him, then paid for all the costs of setting it up. That was the first time Pat's name had been mentioned in our conversation. Pat has quietly done much to serve others in our area, and I'm sure he will continue to do that as long as he is able.

Pat and I sat down for lunch after federal agents conducted their raid. He spoke openly about how he disobeyed federal law while pursuing

8

what he believed to be a medical miracle. Pat expressed profound regret for breaking the law and made no excuses. Your Honor, I am aware that Pat pleaded guilty to a crime in federal court. In my opinion, Pat's conduct in this instance is out of character for him. Pat is a fine, decent person who respects authority and follows the rules. This case does not change my personal assessment of Pat whatsoever. He is a trusted and valued member of our community and my beloved friend.

**From the letter of Patricia Gunn, minister and friend, attached hereto as Exhibit 8:**

For five years, I have known Pat as a dear friend, professional advisor, and family member. My daughter, Ann Claire, is married to Pat's son, Tyler. Pat welcomed my daughter into the Bishop family with immeasurable kindness, generosity, and respect. I have observed Pat's passion for serving other people and his deep connection to his neighbors.

When we are in public together, inevitably Pat will be greeted by someone he's helped in some way or another. Many people seek out Pat's wisdom during a time of crisis. Recently, he counseled a close friend whose wife ended her own life. I remember another friend whose son died in a tragic hunting accident. This friend also turned to Pat for comfort and guidance. People are naturally drawn to Pat for his empathetic heart and fine intellect.

Pat exudes enthusiasm for new ideas and new businesses. I have called him several times for his input on Parresia Ministries, my Christian education nonprofit organization. We brainstorm together about how to reach more people with the Gospel message of grace. Pat shared his professional experiences to help me expand the reach of our personalized scripture cards. I know that I could call him anytime for help with anything. He is a true model of Christian neighborliness and service to others.

From my vantage point, Pat's medical project was another manifestation of his desire to help and to heal. Pat spoke to me about several patients for whom he cared deeply. As in every other aspect of his life, Pat's primary concern was for the wellbeing of others. Pat has also expressed remorse for violating the law. He explained that he accepted responsibility for his unlawful acts by entering a guilty plea in

9

federal court. I feel confident that Pat will do whatever it takes to pay his debt and make things right.

Your Honor, I have served in Christian ministry for over twenty-five years. I have counseled thousands of people through times of turmoil and pain. Nothing is going to diminish Pat's optimistic spirit and ongoing mission to serve others. I believe he has learned from his mistakes and that his most important work still lies ahead of him. I urge this Honorable Court to show mercy to Pat by handing down the most lenient possible sentence.

**From the letter of David Brogdon, owner of Brogdon Energy, attached hereto as Exhibit 9:**

Eight months ago, I met with Patrick Bishop to discuss his innovative new water technology. I was so impressed by his talent and intelligence that I hired him at my company, Brogdon Energy. Patrick now works in New Business Development, encouraging large institutions like hospitals to use our technology to lower their energy costs. In addition, Patrick is creating software extensions in order to make our products and services available internationally. All in all, Patrick is an ideal employee who cares about my company as much as I do.

Patrick is an extremely hardworking individual who puts in long hours to get the job done. He communicates clearly, honestly, and respectfully. I admire his determination, creative mind, and good-natured personality. He's the first person to volunteer for any task around the office. When I needed help with a personal errand, he stepped right up to assist. For my land development company, Patrick introduced me to new builders who came out to the work site on weekends. Clearly, Patrick has a gift for making connections and bringing together good people for good purpose.

Your Honor, I would definitely hire Patrick again in the future. He has a supportive community around him who are standing with him through this legal process. I hope you will consider the context of his actions and give him a lenient sentence.

**From the letter of Christopher S. Edmonds, friend and Global Head of Clearing & Risk at Intercontinental Exchange, Inc., attached hereto as Exhibit 10:**

My name is Christopher S. Edmonds, and I have known Patrick Bishop since 1989. The news of Patrick's federal case shocked and saddened me. Pat has been dear friend to whom I could speak to regarding any topic. I know his good heart and his sincere devotion to caring for others. Pat disclosed the details of his case and immediately took full responsibility for violating federal law. He did not sugarcoat the facts or spin a story. He knows he made poor choices and crossed the line. Knowing him as I do, I am grateful for this opportunity to share my thoughts about Pat.

To Pat, his brother, Jerry, hung the moon and remained the center of his universe. After Jerry lost his battle with cancer, Pat was on a mission to reduce cancer-related suffering for patients and their loved ones. I am certain that Pat's dedication to this alternative treatment was based on the very best intentions. I remember several stories of people who thanked Pat for his efforts. I met one tearful parent whose sick child had been given no chance by their doctors. They told me, "…your friend did everything in the world to help up when no one else would."

Pat is well aware, no matter what his good reasons, he broke the law and must pay the price. Upon reflection, he knows his personal trauma and strong feelings clouded his judgement. In the future, I am confident Pat will make compliance the first order of business in all of his activities. I can report that in all matters related to our water technology company, Pat has been extremely cautious and mindful of all relevant law and regulation.

As Global Head of Clearing & Risk at Intercontinental Exchange, Inc., I make full regulatory compliance my top priority. I am very sorry Pat failed to obey the law in this case, but I can also assure this court that Patrick is a patriotic, law-abiding man by nature. I encourage you to consider the broader context of Pat's unlawful actions. Please keep this letter in mind when you deliberate over the appropriate sentence in this case. I urge this court to show mercy.

**From the letter of Troy King, prior Alabama Attorney General and Attorney, attached hereto as Exhibit 11:**

I served as Alabama's Attorney General for six years. I have never written a letter like this one. As a prosecutor, I spent a great deal of time evaluating defendants to determine their future risk of re-offending and weighing their culpability and mistakes to arrive at a penalty that was commensurate to their crimes. Pat Bishop and I first met two years ago through a mutual business contact. We are currently working together on an innovative project to help large institutions lower their energy costs. As the point person for our team, Pat has earned my trust and respect. I have found him to be highly-intelligent, hard-working, and ethical - a man who makes a productive, positive contribution on a daily basis. Thanks to Pat's efforts, several large businesses are becoming more profitable through energy conservation.

While I do not know the intimate details of Pat's federal case, it is difficult for me to imagine that the man I work with every day acted with a malicious intent to do harm. I commend Pat for accepting responsibility for his legal violations. I believe that he has grown wiser and more sensitive with respect to the importance of full legal compliance. He has learned to ask the right questions and to be on guard for any potential regulatory infractions. I have witnessed how these lessons manifest themselves in his day-to-day decision making: Pat has expressed his sincere remorse to me for the lapse in judgment that brought him before this Court.

I am proud to be associated with this honorable man. I am even prouder to call him my friend. I can attest to Pat's strong support network and deep ties to his community. He is a man of profound faith. Far from presenting a future risk to the public, I believe Pat is a tremendous resource and asset to our customers, and those he serves through his charitable and community activities, and to Birmingham, Jefferson County, and the State of Alabama.

I am proud to publicly and strongly encourage this Court to temper justice with mercy in the case of Patrick Bishop.

**From the letter of Craig Reeves, friend and business owner, attached hereto as Exhibit 12:**

The fact that Pat, a true friend for over 20 years, is facing a serious matter being put forth before you isn't something I take lightly or briefly. I own a fairly large technology company in Hoover, AL and putting my name to a letter such as this is something I take very seriously. I have known Pat long before he became involved in the protein that is at the center of this legal action today.

Pat has always cared about others. He cares about their well being and has always been kind enough to assist whenever the opportunity presents itself. I have seen Pat live through every facet of life; faith, family, and business.

I first met Patrick Bishop twenty-five years ago at Shades Mountain Community Church. We participated in multiple ministries together, including youth ministry and Bible study. When our children were younger, Pat and I worked long hours to organize Friday night sporting events in our local stadium. He is clearly motivated by a passion to serve his fellow man in all aspects of his life.

In 2015, I was diagnosed with prostate cancer. Pat was one of the first individuals I called because I was aware of the work he was doing in protein therapy. Pat never indicated that the protein would cure me. He gave me some of his protein therapy, which I determined helped after conducting my own personal double-blind study. Also, Pat told me to investigate a new FDA-approved therapy called High Intensity Focused Ultrasound (HIFU). In those early days, Pat's deep knowledge and expertise were a great comfort to me. He empowered me to make decisions based on the latest science. Pat gave me the right questions to ask and the best information to guide my thinking. Thanks to Pat, my cancer is gone. I had a 100% recovery.

Pat's family is well- respected and beloved y our faith community and beyond. The Bishops are a patriotic, God-fearing, service-oriented family who work hard to make the world a better place.

Pat and I have had blunt conversations about his legal case. He knows it was wrong to break the law. He takes this case very seriously and has absolutely accepted responsibility for his actions. Pat speaks openly

13

about how his strong emotions impaired his sound judgement. Both Pat's father and brother died from cancer, which of course had an enormous impact on him; Pat and I had conversations about his desire to make a difference in other's health and not suffer the loss that he did. I believe that Pat has learned his lesson and will not repeat these mistakes in the future.

**From the letter of Bradley Kidd, friend, attached hereto as Exhibit 13:**

I met Patrick Bishop twenty years ago when I was in the fourth grade. His son, Tyler, and I were inseparable best friends, so Pat was like a father to me. Except for my own parents, Pat influenced me more than anyone else in my life. I stayed overnight at their house more times than I can count. Together, we attended church, took vacations, and played sports. He taught me how to act like a gentleman and told me to avoid drugs, alcohol, and gambling. Pat was, and still is, my guide and safe harbor.

When I was about 13, Pat went with Tyler and me to a Christian retreat in Gatlinburg, Tennessee. Pat encouraged me along a spiritual path as I developed my own faith. We bought a discipleship book, *Crazy Love,* which we read together and discussed. Pat talked to me about serving my fellow man and using my abilities to make a positive impact on others. I could talk to Pat anytime about anything, even about topics I didn't want to discuss with my own parents. Pat listened to what I had to say without judgement. I knew I could trust him to tell me the truth even if I didn't want to hear it.

The news of Pat's legal trouble broke my heart. I know he pursued that medical treatment for humanitarian reasons. He wanted to help people just like he always does. However, Pat broke the law, so he knows he will pay a price for that. This case did not change my opinion of Pat, not one bit. I will love and respect Pat Bishop forever.

**From the letter of Kyle Bishop, son, attached hereto as Exhibit 14:**

I am the youngest of Patrick Bishop's three children. I love him very much and am proud to tell you more about him in this character reference letter.

My father originally moved to Alabama to be near his best friend, my Uncle Jerry. They spent many years working and playing together until doctors diagnosed Uncle Jerry with cancer. Throughout Uncle Jerry's battle, Dad remained unrelentingly optimistic about Jerry's chances of survival. Then, after Jerry's death, my dad fell into a deep state of mourning. I watched him transform that pain into a passion for helping cancer patients and their families.

My dad did everything in his power to alleviate suffering. Not only did he investigate new scientific possibilities, he served as a counselor and consultant. My dad knew better than anyone the agonizing pain and logistical nightmare than comes with a cancer diagnosis. He was constantly solving problems based on the best evidence he could find. I met one cancer survivor who thought of my dad as her hero. I remember the two-year old who won her cancer battle and is still alive today. I am immensely proud of my father's innovative thinking and tireless efforts to serve sick and suffering cancer patients.

I was at home when federal agents arrived to conduct their search. I will never forget the shock of that experience. In the aftermath, my father spoke openly about how his unlawful acts led to his guilty plea. I have learned an important lesson about how best to proceed with my own creative and scientific work. I will do everything by the book and instruct my team to do the same. I am certain that my father has reflected on his choices and will not make the same mistakes again.

Your Honor, my father will never stop creating innovative solutions to big problems. He has limitless capacity for meaningful work and service. He is a man of fine character who has positive impacted many lives. I hope you will consider my father's whole story and show mercy at sentencing.

**From the letter of Tyler Bishop, son, attached hereto as Exhibit 15:**

My name is Tyler Bishop and I am the oldest child of Patrick Bishop. I am writing with hopes that you will be merciful to my father and give him a lenient sentence. He has taken responsibility for violating the law and is using this experience as a lesson for our entire family. As he builds new technologies and creates new energy solutions, my dad thinks about the big picture which includes strict legal compliance. I can see that he takes a more cautious approach to each business and life

decision. He understands that he broke the law and will not repeat this mistake in the future.

My dad did everything he could to help Jerry after his cancer diagnosis. My dad couldn't think about anything else. We all watched as Jerry transformed from a rugged, strong man into a frail cancer patient. By the time Dad found Dr. Pincus and the PNC-27 peptide, Jerry was too far gone to save. My father grieved Jerry's death and committed himself to helping other patients like Jerry, and other families like ours. He had a single-minded focus on this project and I know people appreciated his work. I will never forget one particular family who credits my dad with the remarkable recovery of their two-year-old daughter.

As I begin my own married life, I think of him constantly. I aspire to be as optimistic, patient, and discerning as my dad. He is a truly great man and I know how blessed I am to be his son.

Your Honor, please remember my letter as you decide my father's sentence.

Many people have taken time to write letters of support to this Court, so that the Court will have the benefit of gaining some insight into Mr. Bishop as a human being, a citizen, a friend, a business associate, a husband, and perhaps most important, a father.

C. **The need for the sentencing posed to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S. Code §3553(a)(2).**

A six-month custodial sentence in this particular case imposed upon Mr. Bishop would be appropriate, particularly given that Mr. Bishop agreed to a large forfeiture amount of $900,000.00. Further, the weight to be given any one

16

factor is within the discretion of the sentencing court and the various factors are not required to be equally weighed. *See, e.g., United States v. Williams*, 526 F.3d 1312 (11th Cir. 2009).

    D.    **The kinds of sentences available.**

As set forth in *Gall*, the kinds of sentences available include probation. *Gall* established beyond any doubt that the United States Supreme Court viewed probation, in the appropriate case and for the appropriate defendant as punishment which, "substantially restricts the liberty of an individual citizen." *Gall*, 552 U.S. at 595. Further:

> Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the Court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual special conditions imposed by the Court.

*Gall* at 595-96 (internal quotations and cites omitted).

Like probation, supervised release operates to place significant constraints on the liberty and freedom of an offender and allows close supervision of their activities. A sentence of a six (6) month custodial term, followed by the maximum three (3) years of supervised release, will fill the statutory mandate of a sentence sufficient, but not greater than necessary, to ensure the factors set forth in

18 U.S. Code §3553(a) in its entirety. In addition, Mr. Bishop has agreed to the $900,000.00 forfeiture amount. Such a sentence will constitute sufficient deterrence, both to this defendant and to other similarly situated in the future, under the particular facts present in this case. The defendant is also ready, willing and able to perform a significant number of community service hours and would welcome that opportunity should the Honorable Court see fit.

  E. **The sentence called for under the now completely advisory sentencing guidelines**

The ultimate Guidelines calculation is determined by the Court, but is set forth in the PSR as a Level 13. However, as stated earlier, the Guidelines sentence is not entitled to a presumption of reasonableness. *See Nelson*, 555 U.S. at 352.

  F. **Any relevant policy statement issued by the Sentencing Commission**

Not applicable.

  G. **The need to avoid unwarranted sentencing disparities**

There are no other defendants in this case, and the sentence suggested by the Defense would not constitute an *unwarranted* disparity.

  H. **The need for restitution.**

While not restitution, a forfeiture amount of $900,000, as set forth in the Plea Agreement (Doc. 20, p. 17) has been agreed to by the defendant. Further, the defendant has agreed to pay at least $600,000.00 by January 1, 2023, or within

one year from his release from custody, whichever is later.  Should Mr. Bishop fail to do so, he risks a governmental foreclosure of his primary residence and a second residence currently occupied by one of his sons and his family.  (*See* Plea Agreement, Doc. 20, pp. 18-19).

III.   **CONCLUSION**

The defendant requests that this Court sentence the defendant to a six-month custodial term, followed by a three-year supervised release period.  On behalf of the defendant, the undersigned counsel submits this Sentencing Memorandum and asks that the Court sentence the defendant accordingly after review of the materials contained and referenced herein.

Respectfully submitted,

s/ James R. Sturdivant
James R. Sturdivant
Attorney for Defendant, Patrick Bishop

**OF COUNSEL:**
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL  35255-5727
Telephone:  (205) 930-5124
Fax:            (205) 212-3839
jsturdivant@sirote.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on April 28, 2021, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                               s/ James R. Sturdivant
                                               OF COUNSEL