FILED
2021 May-02  PM 05:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **2:20-cr-258-KOB-GMB** |
| | ) | |
| PATRICK CHARLES BISHOP | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States submits this memorandum for the Court's consideration in determining an appropriate sentence for defendant Patrick Charles Bishop. The defendant has pleaded guilty to conspiracy to defraud the FDA and consumers regarding products he made, marketed, and sold as a purported cancer treatment. As calculated in his presentence investigation report (PSR), his guidelines range is thirty to thirty-seven months. The parties entered a plea agreement pursuant to which the government agreed to recommend a sentence of no more than eighteen months' custody. *See* Doc. 20. As explained below, the Court should sentence the defendant to eighteen months' custody for his crimes.

## BACKGROUND

Patrick Bishop was indicted on fraud charges related to a product known as PNC-27. *See generally* Doc. 1. PNC-27 is a peptide that was developed by researchers at SUNY and that purportedly holds promise as a treatment for cancer.

The product has not undergone the requisite clinical trials to demonstrate its safety or efficacy. *See* Doc. 20 at 3. The FDA—a federal agency responsible for protecting the public from drugs that may pose risks to human health—has not approved PNC-27 for use in the United States as a drug to treat any disease, including cancer. *Id.*

Earlier this year, Bishop pleaded guilty to conspiracy to defraud the FDA and to introduce misbranded and adulterated PNC-27 products into interstate commerce with the intent to defraud or mislead the FDA and consumers. *See* Doc. 20. The plea agreement Bishop signed lays out the basic facts.

The defendant ordered large quantities of PNC-27 from a Chinese supplier based in Shanghai. *Id.* at 4. The PNC-27 was shipped to the defendant in Birmingham. *Id.* The defendant used the company name "Best Peptide Supply, LLC" to place his orders, and he posed as a researcher buying PNC-27 for "laboratory research purposes, excluding clinical research on [the] human body." *Id.* He certified to FDA officials and to the Chinese supplier that he was using the product only for scientific research. *Id.*

In fact, Bishop had no formal training or education in medicine or the treatment of diseases, was not a laboratory researcher, and did not intend to use PNC-27 for non-human "laboratory research purposes." *Id.* at 2, 3. Bishop used the PNC-27 he received—which, at least until sometime in 2016, he did not independently test for sterility, quality, or purity—to make PNC-27 drug products that he marketed,

sold, and distributed to alternative-medicine clinics and cancer patients. *Id.* at 5. The defendant and others mixed PNC-27 with cocoa butter and froze the resulting mixture in molds to create suppositories designed to be inserted into the orifices of immune-compromised cancer patients. *See id.* at 5. The "manufacture" of these suppositories was far from sterile; Bishop cooked the products up in his kitchen and in a warehouse (which was also used by a company that makes loading dock equipment and commercial overhead doors). *Id.* at 5-6.

The defendant, with others, promoted, sold, and distributed these products to cancer patients in the United States and elsewhere. *Id.* at 6. He did so knowing that PNC-27 is not approved by the FDA to treat cancer or any other disease, and he did so in ways that concealed the true conditions in which his products were being made. *Id.* at 5-6. For example, he described the place where the suppositories were made as a lab, when in truth the "labs" were his kitchen and an ordinary warehouse. *Id.*

Bishop also took steps to hide his true role and the nature of his PNC-27 business. He used the name "Immuno Cellular Restoration Program, Inc." to sell his products. *Id.* at 7. He held himself out as a "research director" and a member of a "research team." *Id.* He used terms like "research" and "ICRPstudy.com" and "sample" on product labels and shipping documents to hide that he was making and selling homemade, non-sterile, FDA-unapproved cancer treatments. *Id.*

3

Bishop also made claims about PNC-27 that were unsubstantiated, questionable, or false. He made claims about the non-toxicity of PNC-27, the effectiveness of PNC-27 as a treatment for cancer, and the mildness of PNC-27 side effects—despite evidence that some individuals who had taken PNC-27 had experienced adverse events or side effects. *Id.* at 8. He did not disclose these adverse events or side effects in his marketing, sale, and distribution of the products. *Id.*

The defendant's PNC-27 business proved lucrative. He received millions of dollars in payments for PNC-27 products, which he used to buy houses, luxury cars, and other items. *Id.* As part of the plea agreement, Bishop has agreed to forfeiture of $900,000. *Id.* at 17.

## ARGUMENT

The defendant should be sentenced to eighteen months' custody. A sentence of that custodial length is warranted to achieve the purposes of 18 U.S.C. § 3553(a), and a lower sentence would require an even larger guideline variance that is not warranted by the evidence and would neither vindicate victims' interests nor adequately deter future FDA frauds.

## I.    An Eighteen-Month Sentence Is Needed To Achieve the Goals of Section 3553(a)

Section 3553(a) strongly supports the imposition of a meaningful prison sentence—here, the government submits, eighteen months—for this defendant.

### A.    The Gravity of the Crimes and the History of the Defendant

Consider first the nature, circumstances, and seriousness of the defendant's crimes.  *See* 18 U.S.C. § 3553(a)(1) & (2)(a).  These crimes were serious.  The defendant carried out a multi-year, multi-million-dollar fraud that endangered the health of already sick people.

The fraud was multi-dimensional.  Bishop defrauded both the FDA (the regulator charged with protecting the public from fake, ineffective, and hazardous drugs) and customers.  The fraud was predatory.  It included misrepresentations to patients with advanced-stage cancer who were desperate to believe Bishop.  The fraud was sophisticated.  It involved multiple entities, named in ways that disguised their true purpose.  When Bishop bought PNC-27 from a Chinese supplier, he was Best Peptide Supply, supposedly a peptide research company committed to not using PNC-27 to treat humans.  When Bishop sold PNC-27 products to patients and clinics, he was the "research director" for "Patrick LLC" or "Immuno Cellular Restoration Program."  When Bishop shipped PNC-27 products from Birmingham to locations across the country and beyond, he used words like "sample" and "research" and "ICRPstudy.com" to further conceal the nature of his business.  He directed individuals to sign non-disclosure agreements regarding PNC-27.  The fraud was also lucrative.  Bishop received millions of dollars in payments for PNC-27 in 2015 and 2016 alone.

In addition to the nature of the defendant's crimes, consider his history and characteristics. That history presents a complex picture. Bishop's character letters and sentencing memorandum portray a man who has helped those in need, who grew interested in PNC-27 during his brother's battle with cancer, and who never intended to cause harm to the patients who used his products. At the same time, this defendant has a history of deception and has shown himself susceptible to greed.

Bishop lied not only to his PNC-27 supplier, shipping personnel, customs officials, and FDA regulators, but also to his customers. He pitched himself as a "research director" involved with a "lab" making lifesaving cancer drugs that had been studied and had no adverse side effects. He oversold his experience and his education, and he understated the degree of clinical and scientific uncertainty surrounding his prized product. He also obscured the conditions in which his products were made—kitchen and warehouse, not white-coat lab. And when Bishop received information from some patients or clinics about potential side effects or adverse outcomes from PNC-27 use, Bishop dismissed the complaints and did not disclose them to others using his products.

The defendant claims that he did these things in the service of a greater good— his belief that PNC-27 can save lives. But whether or not that explains his motives at first or in part, Bishop also profited mightily from the scheme. His PNC-27 business was no mere mercy ministry. Before PNC-27, Bishop had struggled

financially.  In June 2008, he filed a voluntary petition for Chapter 13 bankruptcy. *See In re: Patrick C. Bishop*, Case No. 08-2632-TOM13 (Bankr. N.D. Ala.).[1]  In 2013, five years later, the defendant's household income remained modest.  The defendant's financial picture changed dramatically by 2015, though, as money from PNC-27 began to pour in.  The defendant spent hundreds of thousands of dollars on luxury cars, and paid cash for a house in Liberty Park that cost nearly $800,000.  Yet even with all that money flowing in, the defendant did not change his PNC-27 manufacturing practices.  He kept using an unclean warehouse to mix up his suppositories, with a peptide from China that he knew was not GMP-certified and which he was not testing independently.  Whether or not Bishop believed in the power of his products, the way he engineered his business made him rich and put lives at risk.

The defendant's patterns of deceit and profit are part of his history and his characteristics.  And they, like the serious nature of the defendant's crimes, counsel in favor of a meaningful custodial sentence like the one the government has recommended.

---

[1] The case was dismissed in October 2008 for failure by Bishop to make "plan payments as required by the Confirmation Order" in the matter.  Docs. 26, 36, *In re: Patrick C. Bishop*, Case No. 08-2632-TOM13 (Bankr. N.D. Ala.).

**B.    The Need to Promote Respect for the Law, Justly Punish the Crimes, and Afford Adequate Deterrence**

Meaningful custody is also critical to promote respect for the laws this defendant flouted, to justly punish his crimes, and to adequately deter future crimes against the FDA's regulatory apparatus and the many people it protects. *See* 18 U.S.C. § 3553(a)(2). This case involves a fraud on, among other victims, a government agency. There is a "tendency for people to consider crimes against the government as less serious than crimes committed against a person." *United States v. Carreras*, 793 F. App'x 859, 863-64 (11th Cir. 2019). Imposing meaningful incarceration as a punishment in such cases is a vital way to signal that these crimes are serious, that the laws against them deserve respect, and that violators will be punished. As the Eleventh Circuit has recognized elsewhere, "general deterrence is an important factor in white-collar cases" like this one, "where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014).

These realities demonstrate the need for a custodial sentence of enough length to punish what are serious but often overlooked crimes, and to deter this defendant and others from engaging in similar frauds down the road.

## II.    A Sentence of Eighteen Months Is Warranted Given the Defendant's Guidelines Range

A sentence of the length the government recommends is also reasonable in light of the defendant's guidelines range, which the probation office has calculated

as thirty to thirty-seven months. Although the Guidelines are advisory, they remain "the starting point and the initial benchmark" in determining the sentence that would be "sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines reflect the Sentencing Commission's examination of "tens of thousands of sentences" over many years, and they "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 349 (2007). It is therefore "fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve" those statutory goals. *Id.*

The defendant in this case has laid claim to various mitigating factors, including his family's history with cancer, his desire to help those in need, and his faith in PNC-27 as a potentially effective treatment. Even those considerations, however, do not justify reducing the defendant's sentence below eighteen months. Eighteen months would represent a forty percent discount from the low end of the guidelines range for a defendant who used lies to make millions. The defendant has provided no basis to vary even further below that already discounted mark.

## CONCLUSION

The government requests a sentence of eighteen months' custody.

9

Respectfully submitted,

 */s/ John B. Ward*
John B. Ward
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that, on May 2, 2021, I filed this document electronically using the CM/ECF system, and thereby served the document on the defendant's counsel of record.

/s/ John B. Ward
JOHN B. WARD
Assistant United States Attorney
1801 Fourth Avenue North
Birmingham, AL 35203
(205) 244-2001